No. 113,986

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HANSA CENTER for OPTIMUM HEALTH, LLC,
*Appellant*,

v.

STATE OF KANSAS; KANSAS BOARD OF HEALING ARTS; JOE TATRN, in his Official
Capacity as Investigator of the Kansas Board for the Healing Arts; KATHLEEN SELZLER
LIPPERT, in Her Official Capacity as Executive Director of the Kansas Board for the
Healing Arts,
*Appellees.*

SYLLABUS BY THE COURT

1.

Whether the Kansas State Board of Healing Arts has exceeded its statutory authority in issuing an administrative subpoena requires interpretation of the Kansas Healing Arts Act, K.S.A. 65-2801 *et seq*. This presents a question of law subject to unlimited review.

2.

The enforcement of an administrative subpoena, however, is left to the discretion of the district court or other enforcing tribunals.

3.

Administrative subpoenas may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose. This does not mean, however, that state agencies and boards have unlimited power to issue subpoenas without some showing of relevancy to an investigation.

1

4.

To be valid, administrative subpoenas must satisfy three requirements: (1) The inquiry is one that the agency or board is authorized to make, (2) the demand must not be too indefinite, and (3) the information sought must be reasonably relevant to the purpose of the inquiry.

5.

The legislature enacted the Kansas Healing Arts Act and established the Kansas State Board of Healing Arts as the agency charged with administering the Act. The purpose of the Act is the protection of the public against unprofessional, improper, unauthorized, and unqualified practice of the healing arts. The goal is to secure to the people of Kansas the services of competent, trustworthy practitioners.

6.

The Kansas State Board of Healing Arts has the authority to enforce the Kansas Healing Arts Act and is required to investigate alleged violations of the Act. As part of this authority, the Board has the power to issue administrative subpoenas. In addition, the Board is authorized to appoint a disciplinary counsel who has the duty to investigate matters involving alleged professional incompetency, unprofessional conduct, or any other matter that may result in disciplinary action against a licensee under the Act.

7.

To ensure that the Kansas State Board of Healing Arts does not abuse its power to issue administrative subpoenas, a district court has the power to quash or revoke an administrative subpoena if the information sought does not relate to practices which may be grounds for disciplinary action, is not relevant to the charge which is the subject matter of the hearing or investigation, or does not describe with sufficient particularity the evidence which is required to be produced.

8.

The fact that a malpractice action was unsuccessful does not prevent the Kansas State Board of Healing Arts from investigating matters involving alleged professional incompetency, unprofessional conduct, or other matters that may result in disciplinary action against a licensee under the Kansas Healing Arts Act.

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed March 4, 2016. Affirmed.

*Jacques G. Simon*, of Merrick, New York, and *Gregory P. Forney*, of Shaffer Lombardo Shurin, of Kansas City, Missouri, for appellant.

*Joshana L. Offenbach* and *Stacy R. Bond*, of Kansas State Board of Healing Arts, for appellee.

Before PIERRON, P.J., BRUNS and GARDNER, JJ.

BRUNS, J.:  The Hansa Center for Optimum Health, LLC, appeals from the district court's decision denying its petition to revoke an administrative subpoena issued by the Kansas State Board of Healing Arts. On appeal, the appellant contends that the district court erred as a matter of law in denying its petition. In particular, it argues that the Board of Healing Arts exceeded the scope of its authority under the Kansas Healing Arts Act, K.S.A. 65-2801 *et seq.*, when it issued the administrative subpoena. Because we conclude that the Board of Healing Arts did not exceed the scope of its authority, we affirm.

FACTS

David Robert Jowdy, D.C., a chiropractor licensed to practice in the state of Kansas, works at Hansa Center for Optimum Health, LLC, in Wichita. The nature of the relationship between Hansa Center for Optimum Health, LLC, and Dr. Jowdy is unclear from the record. Moreover, Dr. Jowdy is not a party to this appeal.

3

On April 4, 2014, Nils Nilsen filed a small claims petition in Sedgwick County naming Dr. Jowdy and "Hansa Center" as defendants. In the petition, Nilsen alleged under penalty of perjury that he received "detoxification treatments (sauna and footbaths) at Hansa Center [and] was not given mineral replenishment." Further, Nilsen alleged that he "had to go to [the] emergency [room] and stay in [a] hospital two times because sodium in [his] blood was too low." As a result, Nilsen sought to recover $4,000 in monetary damages plus interest.

Although the record of the small claims action is sparse, it appears that on May 8, 2014, a bench trial was held. The journal entry reflects that Nilsen and Dr. Jowdy appeared at the trial in person. Moreover, the journal entry indicates that Dr. David Jernigan appeared as "president" of Hansa Center. It is impossible to know what occurred during the trial because there is no transcript of the proceedings. Nevertheless, the journal entry states that the trial judge denied Nilsen's claim because there was "[n]ot sufficient proof connecting plaintiff's subsequent condition with defendant's prior treatment and services."

On September 4, 2014, the associate disciplinary counsel for the Board of Healing Arts sent a letter to Dr. Jowdy stating that the Kansas Health Care Stabilization Fund had sent the Board the small claims petition filed by Nilsen. In the letter, the disciplinary counsel stated that the petition "lists allegations of substandard care" by Dr. Jowdy. The letter requested a narrative summary from Dr. Jowdy or his attorney explaining the care and treatment he had provided to Nilsen. In addition, the letter requested any applicable medical records related to Nilsen's claim. The letter also stated that although the Board was treating the petition as a "complaint" against Dr. Jowdy, the "matter has not been opened into an investigation at this point and does not need to be reported to licensing agencies as an investigation."

On September 11, 2014, Eldon L. Boisseau—who was licensed to practice law in the state of Kansas at the time—sent a letter to the Board of Healing Arts in which he enclosed a copy of the small claims petition as well as a copy of the journal entry granting judgement in favor of the defendants. The letter, however, did not include a copy of Nilsen's medical records nor did it include a narrative summary as requested by the Board of Healing Arts. In a follow-up letter to the Board of Healing Arts dated September 15, 2014, Boisseau stated that he believed Dr. Jowdy had "complied with K.S.A. 40-3409 concerning what should be furnished to the [Board] under these circumstances."

On October 2, 2014, a special investigator for the Board of Healing Arts sent a letter to Dr. Jowdy stating that he still needed "to provide a complete written narrative statement concerning the specific allegations" as well as "any information that is relevant to the standard(s) of care and/or other allegations within the malpractice action." Unlike the letter dated September 4, 2014, this letter specifically referred to the matter as an "investigation" and included a Board of Healing Arts case number rather than simply a complaint number.

Also on October 2, 2014, Kathleen Selzler Lippert—the Executive Director of the Board of Healing Arts—issued a subpoena duces tecum to "Hansa Center, 12219 East Central[,] Wichita, KS 67206." The administrative subpoena listed the Board's case number and listed K.S.A. 65-2839a as the statute authorizing its issuance. Specifically, the subpoena commanded the production of medical records—including notes and correspondence—pertaining to Nilsen's "detoxification treatment and care by David Robert Jowdy, DC." The return date listed on the subpoena was October 17, 2014.

In response, Boisseau sent a letter to the Board of Healing Arts dated October 7, 2014, in which he indicated that he was representing "Hansa Center and Dr. David R. Jowdy, D.C." Boisseau asserted that he had "provided what the Board of Healing Arts

5

was entitled based on the statute" and was "refus[ing] to comply with [the] subpoena unless you can produce a complaint filed by Mr. Nilsen regarding his treatment . . . or some other legal authority for [the Board's] request." Further, Boisseau stated that if the Board "persists in seeking these records without legal authority, [he would] file an action in the Third Judicial District, Shawnee County, Kansas District Court to quash any such efforts."

Additionally, Jacques G. Simon—an attorney licensed in the state of New York and several other states—sent a letter on behalf of Dr. Jowdy to the Board of Healing Arts' special investigator dated October 17, 2014. In the letter, Simon asserts that the Board did not have the authority to ask for "a narrative relating to any malpractice action." The letter was evidently delivered by Gregory Forney—who is an attorney licensed in the state of Kansas—along with a cover letter also dated October 17, 2014, indicating that he was serving as Dr. Jowdy's local counsel. Interestingly, although Simon and Forney represent Hansa Center for Optimum Health, LLC, in this case, the limited liability company is not mentioned in either of their letters.

On November 6, 2014, Forney filed a "Petition Pursuant to K.S.A. § 65-2839a(b)(3)(B) for an Order Revoking Administrative Subpoena" in Shawnee County District Court on behalf of Hansa Center for Optimum Health, LLC. At the same time, the limited liability company also filed a motion seeking to revoke the administrative subpoena dated October 2, 2014. In response, the Board of Healing Arts filed both an answer and a motion to dismiss on December 4, 2014.

On March 23, 2015, the district court held a hearing on the petition as well as on the motion to dismiss. At the hearing, no witnesses were presented and no exhibits were admitted into evidence. Rather, counsel for the parties offered argument on their respective positions. After hearing the parties' arguments, the district court took a recess before announcing its decision to deny the request to revoke the administrative subpoena.

6

Subsequently, on May 8, 2015, the district court entered a journal entry denying the relief requested by Hansa Center for Optimum Health, LLC, and dismissing the petition.

ANALYSIS

On appeal, Hansa Center for Optimum Health, LLC, contends that the Board of Healing Arts exceeded its authority in issuing the administrative subpoena seeking medical records pertaining to Dr. Jowdy's care and treatment of Nilsen. Further, the appellant argues that the district court erred as a matter of law in dismissing the petition and by failing to quash the subpoena. In response, the Board of Healing Arts contends that the district court properly dismissed the petition and appropriately refused to quash the subpoena.

*Standard of Review*

Whether the Board of Healing Arts has exceeded its statutory authority in issuing the administrative subpoena to the appellant requires interpretation of the Kansas Healing Arts Act (Act), K.S.A. 65-2801 *et seq*. This presents a question of law subject to unlimited review by this court. Similarly, whether the district court erred in interpreting the Act requires statutory interpretation and is also subject to unlimited review. See *Ryser v. State*, 295 Kan. 452, 464, 284 P.3d 337 (2012). However, "the enforcement of a subpoena duces tecum is left to the discretion of the enforcing tribunal." *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 255, 891 P.2d 422 (1995); see also *State v. Gonzalez*, 290 Kan. 747, 755, 234 P.3d 1 (2010) (applying abuse of discretion standard when reviewing district court decision on motion to quash subpoena).

The Kansas Supreme Court has held that there are "more 'relaxed' standards of relevancy in the context of *administrative investigations* as compared to the 'stringent' relevancy requirement of K.S.A. 60-245(b) for purposes of litigation." (Emphasis added.)

7

*Collingwood Grain, Inc.*, 257 Kan. at 255; see also *Atchison, T. & S.F. Rly. Co. v. Commission on Civil Rights,* 215 Kan. 911, 918, 529 P.2d 666 (1974) (stating administrative investigations generally involve flexible, informal procedures). Specifically, our Supreme Court has found that "administrative subpoenas may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose." *Atchison, T. & S.F. Rly. Co. v. Lopez*, 216 Kan. 108, Syl. 7, 531 P.2d 455 (1975). This does not mean, however, that state agencies and boards have "unlimited subpoena powers and can subject an entire facility to demands or whims without some showing of relevancy to the investigation." *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights*, 229 Kan. 15, 28, 622 P.2d 124 (1981).

Accordingly, to be valid, administrative subpoenas must satisfy three requirements:  "(1) The inquiry must be one that the agency is authorized to make, (2) the demand must not be too indefinite, and (3) the information sought must be reasonably relevant to the purpose of the inquiry." *Hines, Inc. v. State ex rel. Beyer*, 28 Kan. App. 2d 181, 183, 12 P.3d 897 (2000).

*Authority of Board of Healing Arts*

In Kansas,

> "the practice of the healing arts is a privilege granted by legislative authority and is not a natural right of individuals, [as such] it is deemed necessary as a matter of policy in the interests of public health, safety and welfare, to provide laws and provisions covering the granting of that privilege and its subsequent use . . . ." K.S.A. 65-2801.

"To that end, the legislature enacted the [Kansas Healing Arts] Act and established the Board [of Healing Arts] as the administrative agency charged with administering the Act under K.S.A. 65-2812." *Ryser*, 295 Kan. at 464.

8

The Kansas Supreme Court has found:

"'The whole purpose and tenor of the healing arts act is the protection of the public against unprofessional, improper, unauthorized and unqualified practice of the healing arts. The goal is to secure to the people the services of competent, trustworthy practitioners. The act seeks to do this through licensure. The licensing by the state, granted only after minimal standards of proficiency are met, amounts to the state's recognition of the licentiate as a qualified practitioner. The continued holding of the license may be taken by the public as official indication those standards are being maintained. The object of both granting and revoking a license is the same—to exclude the incompetent or unscrupulous from the practice of the healing arts.'" *Ryser*, 295 Kan. at 466 (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 453, 436 P.2d 828 [1968]).

"Simply stated, the State's interest is in regulating the professional conduct of persons licensed to practice under the Act. See K.S.A. 65-2801." *Ryser*, 295 Kan. at 466.

Furthermore, our Supreme Court has explained the authority of the Board of Healing Arts as follows:

"The Board has authority to enforce the Act 'and for that purpose shall make all necessary investigations relative thereto.' K.S.A. 65-2864. As part of any Board investigation or proceeding, the Board has the power to issue subpoenas. K.S.A. 65-2839a(b)(1). The Board is also authorized to appoint a disciplinary counsel who 'shall have the power and the duty to investigate or cause to be investigated all matters involving professional incompetency, unprofessional conduct or any other matter which may result in disciplinary action against a licensee pursuant to K.S.A. 65-2836 through 65-2844, and amendments thereto.' K.S.A. 65-2840a; see also K.S.A. 2011 Supp. 65-2836 (setting forth 29 grounds for disciplinary action); K.S.A. 2011 Supp. 65-2837(a), (b) (defining professional incompetency and unprofessional conduct)." *Ryser*, 295 Kan. at 465.

9

Accordingly, in order to fulfill its statutory duty to "make all necessary investigations relative" to the Act, the Board of Healing Arts has been given the power by the legislature to issue administrative subpoenas compelling the production of documents if the "evidence relates to medical competence, unprofessional conduct or the mental or physical ability of a licensee safely to practice the healing arts." K.S.A. 65-2839a(b)(1); see *Ryser*, 295 Kan. at 459. To ensure that the Board does not abuse this power, a district court has the power to quash an administrative subpoena "if in the court's opinion the evidence demanded does not relate to practices which *may be grounds for disciplinary action*, is not relevant to the charge which is the subject matter of the hearing or investigation or does not describe with sufficient particularity the evidence which is required to be produced." (Emphasis added.) K.S.A. 65-2839a(b)(3)(B).

*District Court's Refusal to Quash Administrative Subpoena*

In the *Ryser* case, the Kansas Supreme Court found that K.S.A. 65-2839a(b)(3)(B)—which the parties agree is applicable to the present case—provided a district court with jurisdiction to consider whether to revoke, limit, or modify an administrative subpoena. 295 Kan. at 460-63. Consequently, our Supreme Court then went on to consider the merits of the appeal. Although we will also address the merits of the present appeal, we note for future cases that K.S.A. 65-2839a(b)(3)(B) was amended in 2015 to limit a district court's jurisdiction to consider the validity of an administrative subpoena "upon application by the board or after exhaustion of available administrative remedies by the person subpoenaed."

Turning to the merits, the appellant argues that the district court should have quashed the administrative subpoena issued by the Board of Healing Arts because it was directed to "Hansa Center" rather than to Hansa Center for Optimum Health LLC. A review of the record on appeal, however, reveals that there was no confusion regarding to whom the administrative subpoena was issued.

10

The subpoena not only listed the name "Hansa Center" as the entity required to produce the requested medical records, it also included the address of "12219 East Central[,] Wichita, KS 67206." It is undisputed that this is the mailing address for Hansa Center for Optimum Health, LLC, registered with the Kansas Secretary of State on August 27, 2014. It is also the address that was listed on the summons in the small claims action that led to the issuance of the subpoena.

We also note that all of the pleadings in the small claims action referred to the clinic as "Hansa Center" rather than by its full name. Likewise, in his letter to the Board of Healing Arts dated October 7, 2014, the appellant's attorney—Boisseau—did not indicate that the Board had subpoenaed the wrong entity. Rather, he twice referred to "Hansa Center" as his client. Thus, we do not find merit in the appellant's argument regarding the name listed on the face of the administrative subpoena.

The appellant also argues that the Board of Healing Arts had no statutory authority to issue the administrative subpoena to obtain the medical records pertaining to Dr. Jowdy's treatment of Nilsen. In particular, the appellant argues that the Board only requested information under K.S.A. 40-3409, which simply required production of documents related to the small claims action filed by Nilsen against Dr. Jowdy. Although this may be true of written correspondence sent to Dr. Jowdy prior to the issuance of the subpoena to the appellant, we note that the administrative subpoena does not mention K.S.A. 40-3409. Instead, the subpoena states on its face that it was issued pursuant to K.S.A. 65-2839a. Accordingly, we find no merit in this argument.

Further, the appellant argues that the district court erred in finding that "a dismissal of a . . . small claims court case does not equate to a finding that a licensee did not violate the Healing Arts Act" and that the "dismissal of the Sedgwick County case is not controlling on the issues [in] this matter." Although K.S.A. 2014 Supp. 65-2836(w) states that a licensee may be subject to disciplinary action if "[t]he licensee has an

11

adverse judgment, award or settlement against the licensee resulting from a medical liability claim related to acts or conduct similar to acts or conduct which would constitute grounds for disciplinary action under this section," it is not the only statute authorizing the Board of Healing Arts to investigate a licensee for possible violations of the Act. Moreover, there are many reasons why a small claims petition may be denied. Thus, we find that the fact the small claims action was unsuccessful does not prevent the Board from investigating other possible violations of the Act by Dr. Jowdy.

Finally, the appellant argues that the Board of Healing Arts had no legal basis for issuing the administrative subpoena seeking the medical records pertaining to Dr. Jowdy's care and treatment of Nilsen. But this argument ignores the Board's statutory authority to investigate all matters involving professional incompetency, unprofessional conduct, or any other matter which may result in disciplinary action against a licensee, as well as its authority to issue subpoenas in conjunction with such investigations. See K.S.A. 2014 Supp. 65-2837(a) and (b); K.S.A. 2839a(b)(1); K.S.A. 65-2840a; K.S.A. 65-2864. In fact, K.S.A. 2014 Supp. 65-2836 sets forth 29 grounds that could possibly lead to disciplinary action being taken by the Board of Healing Arts against a licensee.

In the small claims petition filed by Nilsen, he did not simply allege that Dr. Jowdy had performed "detoxification treatments (sauna and footbaths)" at the appellant's clinic. Rather, he went on to allege that during these treatments he "was not given mineral replenishment" and "had to go to emergency and stay in hospital two times because sodium in my blood was too low." Based on these allegations, we find that it was reasonable for the Board of Healing Arts to investigate whether Dr. Jowdy may have "engaged in improper or unprofessional conduct in the course of his treatment." Moreover, we agree with the district court that Nilsen's medical records were relevant for the Board to properly perform its investigation into the allegations set forth in the small claims petition.

12

As the Board of Healing Arts points out, it cannot determine simply from a review of the small claims petition and journal entry whether Dr. Jowdy violated the Act. As such, it was reasonable for the Board to seek to review the medical records in order to adequately fulfill its duty to protect the public. Although the Board of Healing Arts likely could have obtained the medical records by asking Nilsen to sign a medical records release, it was not unreasonable or legally inappropriate for the Board to issue an administrative subpoena to obtain a copy of the records from the appellant.

In conclusion, we find that the district court correctly applied the law in refusing to quash the administrative subpoena issued by the Board of Healing Arts for the medical records pertaining to the care and treatment of Nilsen by Dr. Jowdy at the appellant's clinic. We further find that it was appropriate for the Board to investigate the allegations asserted by Nilsen against Dr. Jowdy in the small claims petition. Moreover, we find that the Board was authorized by law to issue the administrative subpoena, it was not indefinite or overbroad, and it seeks medical records that are reasonably relevant to the investigation of a person who is licensed to practice healing arts in Kansas.

We, therefore, conclude that the district court's denial of the petition to revoke the administrative subpoena should be affirmed.

Affirmed.