NOT DESIGNATED FOR PUBLICATION

No. 114,529

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID JERNIGAN, D.C.,
*Appellant*,

v.

STATE OF KANSAS, *et al.*,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed September 9, 2016. Vacated and remanded with directions.

*Gregory P. Forney*, of Shaffer Lombardo Shurin, of Kansas City, Missouri, for appellant.

*Joshana L. Offenbach*, and *Stacy R. Bond*, of Kansas State Board of Healing Arts, for appellees.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*: The Board of Healing Arts (Board) received a written complaint concerning David Jernigan, D.C., and the Hansa Center for Optimum Health (Hansa Center). As part of its investigation of the complaint, the Board issued a subpoena to Dr. Jernigan requiring him to produce the medical records of five unidentified patients that had "received holistic and conventional chiropractic treatment at Hansa Center." In response, Dr. Jernigan sought to revoke or quash the subpoena in district court. Ultimately, the district court denied the motion for lack of jurisdiction and, in the alternative, on the merits. On appeal, we conclude that although the district court was correct that a 2015 amendment to K.S.A. 65-2839a(b)(3) is procedural and would

1

normally be applied retroactively, it denied Dr. Jernigan a vested right under the circumstances presented. Moreover, we find the record to be inadequate to allow us to appropriately review the propriety of the subpoena. Thus, we vacate the district court's order and remand this matter for further proceedings.

FACTS

On July 28, 2014, the Board received a letter from a "B. Mellon" who purportedly is from Scottsbluff, Nebraska. The letter alleged that someone using the name "'Heathersdad'" was posting "lengthy fictitious posts about the wonders and successes of the Hansa Center" on two health forums—"Healingwell" and "MDJunction"—in an attempt to solicit business. The letter went on to suggest that the person who was writing the posts might be "directly associated with the Hansa [C]enter." The letter further alleged that "[a]ccording to anecdotes of many posters I consider to be real on these forums the Hansa [C]enter has only a record of taking people's money in large amounts and offering little in the way of tangible help."

It appears that the Board treated the letter as a written complaint and assigned a special investigator to look into the matter. On August 6, 2014, the special investigator sent a letter to Dr. Jernigan in which he was advised that a complaint had been received by the Board and that it was opening an investigation. The letter from the special investigator requested that Dr. Jernigan explain, among other things, whether the testimonials on the Hansa Center website were legitimate.

On August 20, 2014, an attorney representing Dr. Jernigan submitted a response to the letter from the special investigator. The attorney stated that "Heathersdad" was not a fictitious poster and that neither Dr. Jernigan nor the Hansa Center controlled the postings made by members of the general public. Moreover, according to Dr. Jernigan's attorney, anything posted on a public forum would be protected speech under the First Amendment

2

to the United States Constitution. The attorney also maintained that the allegation in the letter that the Hansa Center has a record of taking money from patients without providing them any help was too general to allow for a response. In addition, Dr. Jernigan's attorney stated that there were no facts to back up such an allegation. Finally, the attorney asserted that none of the allegations in the complaint constituted a violation of the Kansas Healing Arts Act, K.S.A. 65-2801 *et seq*.

On October 24, 2014, the special investigator mailed a subpoena duces tecum to Dr. Jernigan. The subpoena commanded him to produce—by November 11, 2014—the medical records of "five (5) patients who have received holistic and conventional chiropractic treatment at the HANSA Center." No specific patients were identified in the subpoena. In a cover letter, the special investigator stated that the Board was requesting the patient records as a result of the representation of Dr. Jernigan's attorney that "[a]ll testimonials [on the Hansa Center website] are authentic, real and were formulated by actual patients who sought and received holistic and conventional chiropractic treatment at the HANSA Center."

Dr. Jernigan objected to the Board's subpoena in a letter from his attorney dated November 5, 2014. Specifically, he objected to the subpoena because it sought information that was "palpably irrelevant to the subject matter of the investigation as disclosed by [the special investigator] in [his] initial cover letter dated August 6, 2014[,] and the initial complaint attached thereto." Dr. Jernigan's attorney also asserted in his letter that the subpoena was burdensome and exceeded the scope of the Board's subject matter jurisdiction. Furthermore, the letter indicated that Dr. Jernigan would be applying to the district court for an order revoking the subpoena under K.S.A. 65-2839a(b)(3) and for an order quashing the subpoena under K.S.A. 2015 Supp. 60-245.

On January 13, 2015, Dr. Jernigan filed an action in Shawnee County District Court against the State of Kansas, the Board of Healing Arts, and various other parties.

Dr. Jernigan asserted that the district court had jurisdiction under K.S.A. 65-2839a(b)(3)(B), K.S.A. 2015 Supp. 60-245(c), K.S.A. 60-1701 *et seq.*, and 42 U.S.C. § 1983. In addition to seeking to revoke or quash the subpoena duces tecum, he also sought both a preliminary and permanent injunction preventing the Board from enforcing the subpoena.

The Board filed an answer and response to Dr. Jernigan's petition on March 4, 2015. Dr. Jernigan then filed a memorandum in reply to the Board's response on April 10, 2015. The parties presented oral arguments on their respective legal positions at a hearing held on June 15, 2015. Although the transcript is not in the record on appeal, it appears that no evidence was presented at the hearing.

After the hearing was completed, an amendment to K.S.A. 65-2839a(b)(3) became effective. L. 2014, ch. 131, sec. 14. Although the amendment had been passed by the 2014 Kansas Legislature, it did not become effective until July 1, 2015. The amendment added a provision requiring "exhaustion of available administrative remedies by the person subpoenaed" prior to the district court issuing an order relating to a subpoena issued by the Board. Previously, a subpoenaed person was not required to exhaust available administrative remedies before seeking relief from the district court. *Ryser v. State*, 295 Kan. 452, 460-63, 284 P.3d 337 (2012).

On August 21, 2015, 52 days after the amendment to K.S.A. 65-2839a(b)(3) became effective, the district court filed a memorandum decision and order, denying Dr. Jernigan's request to quash or revoke the subpoena duces tecum. In reaching this conclusion, the district court found that the amendment to K.S.A. 65-2839a(b)(3) requiring the exhaustion of available administrative remedies was procedural and, as such, should be applied retroactively to this action. Because Dr. Jernigan had not exhausted his available remedies pursuant to K.S.A. 2015 Supp. 65-2839a(b)(1)—which provides that within 5 days after service of an administrative subpoena, a person may

4

petition the Board to limit or modify the subpoena—the district court found that it lacked subject matter jurisdiction in this case. In the alternative, the district court found that even if it had jurisdiction to consider Dr. Jernigan's motion, his request to revoke or quash the subpoena would fail on the merits.

Dr. Jernigan filed a timely notice of appeal on September 11, 2015.

ANALYSIS

*Application of 2015 Amendment to K.S.A. 65-2839a(b)(3)*

On appeal, Dr. Jernigan contends that the district court erred in finding that the 2015 amendment to K.S.A. 65-2839a(b)(3) was a procedural amendment that should be applied retroactively. He also contends that the amendment—as applied to him—is unconstitutional. The parties agree that the retroactive application of the 2015 amendment to K.S.A. 65-2839a(b)(3) was never raised by them while the case was pending before the district court. Instead, the district court raised the issue *sua sponte*. Thus, we find that the issue of retroactivity is properly before us on appeal.

Whether a statute should be applied retroactively is an issue of statutory interpretation over which we have unlimited review. See *State v. Brownlee*, 302 Kan. 491, 508, 354 P.3d 525 (2015). The general rule is that a statute operates prospectively unless its language clearly indicates the legislature's intent that it operate retroactively. There is an exception to this rule that states that the amendment applies retroactively if it does not prejudicially affect the parties' substantive rights but is merely procedural or remedial. *State v. Williams*, 291 Kan. 554, 557, 244 P.3d 667 (2010), *overruled in part on other grounds State v. Keel*, 302 Kan. 560, 589, 357 P.3d 251 (2015).

5

K.S.A. 2015 Supp. 65-2839a(b)(3) does not expressly state whether its amendments are to be applied retroactively. Evidently, the statute was amended in response to the Kansas Supreme Court's holding in *Ryser*, 295 Kan. at 460-63, that a person served with a subpoena by the Board could seek to have it revoked, limited, or modified by the district court without first being required to exhaust his or her administrative remedies. In *Hansa Center for Optimum Health v. Kansas Bd. of Healing Arts*, 52 Kan. App. 2d 503, 510-11, 369 P.3d 977 (2016), this court noted that the statute had been amended in 2015 "to limit a district court's jurisdiction to consider the validity of an administrative subpoena 'upon application by the board or after exhaustion of available administrative remedies by the person subpoenaed.'"

The district court was correct in concluding that the amendment at issue in this case is procedural not substantive because it regulates the process for having access to the district court to revoke, limit, or modify a subpoena issued by the Board. See *Brownlee*, 302 Kan. at 509-10. This does not end our analysis, however, because a statutory amendment may not be applied to impact a vested or substantive right that is "'so fixed that it is not dependent on any future act, contingency or decision to make it more secure.'" *State v. Dupree*, 304 Kan. 43, 52, 371 P.3d 862 (2016) (quoting *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. 469, 474, 618 P.2d 778 [1980]).

Under K.S.A. 65-2839a(b)(1), a subpoenaed person may petition the Board to revoke, limit, or modify a subpoena if the subpoenaed person requests such review within 5 days after the service of the subpoena. At the time this action was filed, the amendment to K.S.A. 65-2839a(b)(3) had not yet become effective. In fact, it did not become effective until nearly 6 months *after* Dr. Jernigan filed his petition in the district court. Clearly, at the time this action was filed, Dr. Jernigan was not required to seek relief from the Board before applying to the district court to attempt to revoke the subpoena served on him by the Board. See *Ryser*, 295 Kan. at 462 (stating that "K.S.A. 65-2839a(b)(1)

6

permits but does not require a person to seek relief from the Board before applying to the district court for review of a subpoena").

Accordingly, at the time the petition in this action was filed, the district court had subject matter jurisdiction to issue an order revoking, limiting, or modifying the subpoena. Moreover, we note that under the doctrine of continuing jurisdiction, once subject matter jurisdiction is acquired over a case, jurisdiction over that case continues and is not divested by subsequent events. See *State ex rel. Owens v. Hodge*, 230 Kan. 804, 813, 641 P.2d 399 (1982); see also *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991) (The Court has "consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). Applying the doctrine of continuing jurisdiction in this action, we conclude that the amendment to K.S.A. 65-2839a(b)(3)(B) that became law on July 1, 2015, did not strip the district court of its subject matter jurisdiction under the circumstances presented.

Furthermore, we do not find the 2015 amendment to K.S.A. 65-2839a(b)(3) to be unconstitutional or invalid as a matter of law because it continues to afford judicial review to a person served with an administrative subpoena by the Board before that person is required to comply with the subpoena. See *Los Angeles v. Patel*, 576 U.S. ___, 135 S. Ct. 2443, 2452, 192 L. Ed. 2d 435 (2015) ("The Court has held that absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."). Although 5 days after service of an administrative subpoena is a short window, the person who is served with an administrative subpoena continues to have the opportunity under K.S.A. 2015 Supp. 65-2839a(b)(1) to petition the Board to revoke, limit, or modify the subpoena. Moreover, if the person served is not satisfied with the ruling of the Board, he or she continues to have the opportunity under K.S.A. 2015 Supp. 65-2839a(b)(3) to ask the district court to

7

revoke, limit, or modify the subpoena before compliance is required. Thus, the 2015 amendment does not obliterate the right to precompliance judicial review of a subpoena served by the Board.

*Determination on the Merits*

Despite the fact that the district court found it lacked subject matter jurisdiction, it went on to conclude—in the alternative—that Dr. Jernigan's petition to revoke or quash the subpoena lacked merit. Nevertheless, as the district court candidly admitted, the allegations contained in the letter received by the Board that instigated the investigation "do not appear to relate to the requested medical records." Moreover, the district court stated that any allegations in the letter regarding "unprofessional conduct" were tangential at best. In fact, the district court appropriately called such allegations "vague and secondary in nature" to the primary complaint set forth in the letter.

We explained the framework of the Board's authority under the Kansas Healing Arts Act in *Hansa Center for Optimum Health*, 52 Kan. App. 2d at 509-10, as follows:

> "In Kansas,
>
> 'the practice of the healing arts is a privilege granted by legislative authority and is not a natural right of individuals, [as such] it is deemed necessary as a matter of policy in the interests of public health, safety and welfare, to provide laws and provisions covering the granting of that privilege and its subsequent use . . . .' K.S.A. 65-2801.
>
> "'To that end, the legislature enacted the [Kansas Healing Arts] Act and established the Board [of Healing Arts] as the administrative agency charged with administering the Act under K.S.A. 65-2812.' *Ryser*, 295 Kan. at 464.
>
> "The Kansas Supreme Court has found:

8

"'The whole purpose and tenor of the healing arts act is the protection of the public against unprofessional, improper, unauthorized and unqualified practice of the healing arts. The goal is to secure to the people the services of competent, trustworthy practitioners. The act seeks to do this through licensure. The licensing by the state, granted only after minimal standards of proficiency are met, amounts to the state's recognition of the licentiate as a qualified practitioner. The continued holding of the license may be taken by the public as official indication those standards are being maintained. The object of both granting and revoking a license is the same—to exclude the incompetent or unscrupulous from the practice of the healing arts.'" *Ryser*, 295 Kan. at 466 (quoting *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 453, 436 P.2d 828 [1968]).

"'Simply stated, the State's interest is in regulating the professional conduct of persons licensed to practice under the Act. See K.S.A. 65-2801.' *Ryser*, 295 Kan. at 466.

"Furthermore, our Supreme Court has explained the authority of the Board of Healing Arts as follows:

'The Board has authority to enforce the Act "and for that purpose shall make all necessary investigations relative thereto." K.S.A. 65-2864. As part of any Board investigation or proceeding, the Board has the power to issue subpoenas. K.S.A. 65-2839a(b)(1). The Board is also authorized to appoint a disciplinary counsel who "shall have the power and the duty to investigate or cause to be investigated all matters involving professional incompetency, unprofessional conduct or any other matter which may result in disciplinary action against a licensee pursuant to K.S.A. 65-2836 through 65-2844, and amendments thereto." K.S.A. 65-2840a; see also K.S.A. 2011 Supp. 65-2836 (setting forth 29 grounds for disciplinary action); K.S.A. 2011 Supp. 65-2837(a), (b) (defining professional incompetency and unprofessional conduct).' *Ryser*, 295 Kan. at 465.

9

"Accordingly, in order to fulfill its statutory duty to 'make all necessary investigations relative' to the Act, the Board of Healing Arts has been given the power by the legislature to issue administrative subpoenas compelling the production of documents if the 'evidence relates to medical competence, unprofessional conduct or the mental or physical ability of a licensee safely to practice the healing arts.' K.S.A. 65-2839a(b)(1); see *Ryser*, 295 Kan. at 459."

The Kansas Supreme Court has held that there are "more 'relaxed' standards of relevancy in the context of administrative investigations as compared to the 'stringent' relevancy requirement of K.S.A. 60-245(b) for purposes of litigation." *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 255, 891 P.2d 422 (1995); see also *Atchison, T. & S.F. Rly. Co. v. Commission on Civil Rights*, 215 Kan. 911, 918, 529 P.2d 666 (1974) (stating that administrative investigations generally involve flexible, informal procedures). Specifically, our Supreme Court has found that "administrative subpoenas may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose." *Atchison, T. & S.F. Rly. Co. v. Lopez*, 216 Kan. 108, Syl. 7, 531 P.2d 455 (1975).

This does not mean, however, that state agencies and boards have "unlimited subpoena powers and can subject an entire facility to demands or whims without *some showing of relevancy to the investigation*." (Emphasis added.) *Cessna Aircraft Co. v. Kansas Comm'n on Civil Rights*, 229 Kan. 15, 28, 622 P.2d 124 (1981). See also *Hansa Center for Optimum Health*, 52 Kan. App. 2d at 508-09. Accordingly, although the requirements on the Board are not stringent, it still has the burden to show how the privileged and confidential medical records of five unidentified patients who "received holistic and conventional chiropractic treatment at the HANSA Center" are relevant to the investigation of Dr. Jernigan's professional conduct or competence.

To be valid, an administrative subpoena must satisfy three requirements: "(1) The inquiry must be one that the agency is authorized to make, (2) the demand must not be

10

too indefinite, and (3) the information sought must be reasonably relevant to the purpose of the inquiry." *Hines, Inc. v. State ex rel. Beyer*, 28 Kan. App. 2d 181, 183, 12 P.3d 897 (2000). To ensure that the Board does not abuse its subpoena power, K.S.A. 2015 Supp. 65-2839a(b)(3)(B) states that the subpoena may be revoked if a district court finds that "the evidence demanded [1] does not relate to practices which may be grounds for disciplinary action, [2] is not relevant to the charge which is the subject matter of the hearing or investigation or [3] does not describe with sufficient particularity the evidence which is required to be produced."

Dr. Jernigan argues that the allegations in the initial complaint against the Hansa Center did not raise the possibility of any of the grounds for disciplinary action that the district court cited, which were: (1) unprofessional or dishonorable conduct; (2) addiction to liquor or drugs; (3) invading a field of practice for which the licensee is unlicensed; (4) ability to safely practice healing arts impaired by physical or mental illness or use of alcohol, drugs, or controlled substance; and (5) failure to report knowledge of others violating the Act. K.S.A. 2015 Supp. 65-2836(b), (e), (g), (i), and (l). Although it is possible that some of the allegations set forth in the letter that gave rise to the investigation of Dr. Jernigan's practice could involve unprofessional or dishonorable conduct, it is unclear from the record on appeal why the district court cited the remaining subsections.

On appeal, the Board argues:

"The patient's medical records are relevant to the subject matter of the investigation. It would be difficult, if not impossible, to determine what care was given, if the care was experimental and followed the proper standards, if [Dr. Jernigan] engaged in unprofessional conduct or if the appropriate standard of care was met without medical records."

11

Certainly, the Board is entitled to conduct investigations into allegations of unprofessional conduct or deviations from the appropriate standard of care. But the Board has not shown how the medical records of five random patients—evidently to be selected by Dr. Jernigan—would advance its investigation. Although relevant fishing expeditions are allowed in administrative investigations, there still has to be "some minimal justification or expectation that there may be some fish in the pond." *Cessna Aircraft Co.*, 229 Kan. at 28.

Ultimately, the decision regarding relevancy is subject to the sound discretion of the district court. At this point, however, the record before us is simply insufficient for us to make a determination regarding whether it appropriately exercised its discretion in this case. We, therefore, vacate the district court's order and remand this matter to the district court for a hearing—including the presentation of evidence if the parties desire to do so—at which the Board must make a showing of relevancy to the investigation and the district court must determine whether the other requirements for a valid subpoena under K.S.A. 65-2839a have been met.

Vacated and remanded with directions.