No. 103,579

CAROL ANN RYSER, M.D., *Appellant*, v. STATE OF KANSAS; KANSAS BOARD OF HEALING ARTS; BRIT ROBERTSON in his Official Capacity as Investigator of the KANSAS BOARD OF HEALING ARTS; and KATHLEEN SELZLER LIPPERT in her Official Capacity as Executive Director of the KANSAS BOARD OF HEALING ARTS, *Appellees*.

(284 P.3d 337)

Opinion filed September 7, 2012.

*Brennan P. Fagan*, of Fagan Emert & Davis, L.L.C., of Lawrence, and *Jacques G. Simon*, of New York, New York, argued the cause, and *William J. Skepnek*, of Skepnek Fagan & Davis, P.A., of Lawrence, and *Mark Emert*, of Fagan Emert & Davis, L.L.C., of Lawrence, were with them on the briefs for appellant.

*Joshana L. Offenbach*, associate disciplinary counsel, of Kansas State Board of Healing Arts, argued the cause, and *William Scott Hesse*, former general counsel, and *Kelli J. Stevens*, general counsel, of same board, were with her on the briefs for appellee.

The opinion of the court was delivered by

MORITZ, J.: Carol Ann Ryser, M.D., appeals from the district court's order denying her petition to revoke an administrative subpoena issued by the Kansas Board of Healing Arts (Board). We affirm the district court's determination that Ryser was not required to exhaust administrative remedies before seeking relief

from the district court under K.S.A. 65-2839a(b)(3)(B). And on the merits of this appeal, we affirm the district court's denial of Ryser's petition based on our conclusion that the Board had authority under the Kansas Healing Arts Act, K.S.A. 65-2801 *et seq.* (Act), to investigate and subpoena Ryser, a Kansas licensee who was practicing under the Act, even though the investigation was based upon her practice of medicine in Missouri.

## Factual and Procedural Background

Ryser is licensed to practice medicine in Kansas and Missouri. In August 2009, the Board opened a disciplinary investigation based on information that a patient Ryser treated in Missouri had filed a lawsuit against Ryser alleging medical negligence, fraud, and misrepresentation. As part of its investigation, the Board issued a subpoena requesting the production of documents related to Ryser's treatment of the Missouri patient.

In October 2009, Ryser filed a petition in district court under K.S.A. 65-2839a(b)(3)(B) seeking revocation of the subpoena. Ryser argued the subpoena did not seek evidence relevant to a lawful investigation because the Board lacked authority to investigate or discipline her based on her practice of medicine in Missouri.

In response, the Board challenged the district court's jurisdiction to review the subpoena, arguing Ryser failed to exhaust administrative remedies or to demonstrate she was entitled to interlocutory review of a nonfinal agency action as required by the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* (KJRA). Substantively, the Board argued it had authority to investigate Ryser's practice of medicine and to issue the subpoena because Ryser is a Kansas licensee and the allegations in the Missouri lawsuit, if true, constituted grounds for discipline under the Act.

The district court rejected the Board's jurisdictional challenges and determined K.S.A. 65-2839a(b)(3)(B) permitted Ryser to directly petition the court for an order revoking the subpoena without first exhausting administrative remedies. The court then determined the Board had authority to investigate Ryser's actions in Missouri and to issue the subpoena because Ryser is a Kansas licensee who was practicing medicine within the meaning of the Act.

The court reasoned that the Act "implies that some sort of action must be taken by the professional [but] does not indicate that the licensee must take that action in the State of Kansas."

Ryser filed a timely notice of appeal in the Court of Appeals, and the case was transferred to this court on this court's own motion under K.S.A. 20-3018(c).

### RYSER WAS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE PETITIONING THE DISTRICT COURT TO REVOKE THE SUBPOENA UNDER K.S.A. 65-2839a(b)(3)(B).

In the district court, the Board argued Ryser failed to exhaust administrative remedies as required by the KJRA and that this failure deprived the district court of jurisdiction to consider Ryser's application for review in the district court. But the Board did not cross-appeal the district court's determination that Ryser was not required to exhaust administrative remedies before seeking relief from the district court under K.S.A. 65-2839a(b)(3)(B). Instead, in its initial appeal brief, the Board asserted that this court need not address the administrative exhaustion issue because neither party raised the issue on appeal.

But we have a duty to question jurisdiction on our own initiative. See *State v. Comprehensive Health of Planned Parenthood*, 291 Kan. 322, 352, 241 P.3d 45 (2010); see also *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009) (Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, including a failure to object.). Significantly, if the district court lacked jurisdiction to enter the order Ryser appeals from, this court cannot acquire jurisdiction over the subject matter on appeal. See *Friedman*, 287 Kan. at 752. And when the record shows a lack of jurisdiction, we have a duty to dismiss the appeal. *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008).

This court issued a show cause order requesting the parties to file supplemental briefs as to why the appeal should not be dismissed for lack of subject matter jurisdiction and specifically for a failure to exhaust administrative remedies. In its supplemental brief, the Board reversed course and asserted the appeal should be dismissed for lack of appellate jurisdiction based on Ryser's

failure to exhaust administrative remedies under the KJRA and the Act. Ryser also filed a supplemental brief, continuing to maintain that K.S.A. 65-2839a(b)(3)(B) does not require administrative exhaustion before seeking review of a subpoena in district court.

*Standard of review*

Whether jurisdiction exists is a question of law over which we exercise unlimited review. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 165, 210 P.3d 105 (2009). Similarly, we exercise unlimited review over the question of whether a party is required to exhaust administrative remedies. *Sandlin v. Roche Laboratories, Inc.*, 268 Kan. 79, 82, 991 P.2d 883 (1999); *Litzinger v. Bruce*, 41 Kan. App. 2d 9, 11, 201 P.3d 707 (2008). Finally, to the extent this issue requires interpretation of the KJRA or the Act, our review is also unlimited. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

*The KJRA's exhaustion requirement*

The Board contends the KJRA precludes review of the administrative subpoena issued to Ryser because: (1) Ryser failed to seek Board review of the subpoena as provided in K.S.A. 65-2839a(b)(1) before filing her application for judicial review, thus failing to exhaust her administrative remedies as required by K.S.A. 2011 Supp. 77-612; and (2) the Board's issuance of the subpoena was a nonfinal agency action and Ryser failed to seek to file an interlocutory appeal under K.S.A. 77-607 before filing her application for judicial review.

Ryser contends that despite the KJRA's broad application to agency actions, the specific statute at issue here, K.S.A. 65-2839a, is inconsistent with, and cannot be reconciled with, the KJRA. Accordingly, she contends the KJRA's exhaustion requirements do not apply to K.S.A. 65-2839a(b)(3)(B).

Thus, to determine whether Ryser was required to exhaust administrative remedies before seeking relief from the district court under K.S.A. 65-2839a(b)(3)(B), we must interpret and reconcile provisions of the Act and provisions of the KJRA. In doing so, we are mindful of the most fundamental rule of statutory construction—*i.e.*, that the intent of the legislature governs if that intent

can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009).

We first attempt to ascertain legislative intent by reading the plain language of the statutes and giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. But when the statute's language or text is unclear or ambiguous, we "employ canons of construction, legislative history, or other background considerations to divine the legislature's intent and construe the statute accordingly. [Citation omitted.]" *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 564-65, 276 P.3d 188 (2012).

Under the KJRA, the Board is an administrative agency, see K.S.A. 77-602(a) and (k), and its act of issuing an investigative subpoena is an agency action. See K.S.A. 65-2839a(b)(1) (giving Board authority to issue investigative subpoenas); K.S.A. 77-602(b)(3) (defining "agency action" to include "an agency's performance of . . . any other duty, function or activity, discretionary or otherwise"). More specifically, the Board's act of issuing an investigative subpoena is a nonfinal agency action. See K.S.A. 77-607(b)(2) (defining nonfinal agency action to include the whole or a part of an agency investigation); *Williams Gas Pipelines Central, Inc. v. Kansas Corporation Comm'n*, 27 Kan. App. 2d 573, 579, 7 P.3d 311 (holding that the "institution of an investigation docket does not as a matter of law represent 'final agency action' that would afford judicial review under K.S.A. 77-607"), *rev. denied* 270 Kan. 904 (2000).

The Act specifically provides that "[j]udicial review and civil enforcement of any agency action under [the Healing Arts Act] shall be in accordance with the [KJRA]." K.S.A. 2011 Supp. 65-2851a(b); see also K.S.A. 2011 Supp. 77-603(a) (establishing that the KJRA applies to "all agencies and all proceedings for judicial review . . . of agency actions not specifically exempted by statute from the provisions of [the KJRA]"); K.S.A. 2011 Supp. 77-603(c) (containing no exemptions for agency actions under the Healing

Arts Act); K.S.A. 77-606 (establishing the KJRA as "the exclusive means of judicial review of agency action," subject to K.S.A. 2011 Supp. 77-603).

Under the KJRA, a prerequisite to filing a petition for judicial review is the exhaustion of "all administrative remedies available within the agency." K.S.A. 2011 Supp. 77-612; *Friedman*, 287 Kan. at 752. And, under the KJRA, a person is entitled to interlocutory review of a nonfinal agency action "only if: (a) It appears likely that the person will qualify under K.S.A. 77-607 for judicial review of the related final agency action; and (b) postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement." K.S.A. 77-608.

But despite the broad language of the KJRA regarding its application to judicial review of final and nonfinal agency actions, K.S.A. 65-2839a(b)(3)(B) provides a specific procedure for judicial review of Board-issued subpoenas which differs significantly from, and cannot be reconciled with, the judicial review contemplated under the KJRA. K.S.A. 65-2839a(b) provides, in relevant part:

"(b) For the purpose of all investigations and proceedings conducted by the board:

(1) The board may issue subpoenas compelling the attendance and testimony of witnesses or the production for examination or copying of documents or any other physical evidence if such evidence relates to medical competence, unprofessional conduct or the mental or physical ability of a licensee safely to practice the healing arts. Within five days after the service of the subpoena on any person requiring the production of any evidence in the person's possession or under the person's control, such person may petition the board to revoke, limit or modify the subpoena. The board shall revoke, limit or modify such subpoena if in its opinion the evidence required does not relate to practices which may be grounds for disciplinary action, is not relevant to the charge which is the subject matter of the proceeding or investigation, or does not describe with sufficient particularity the physical evidence which is required to be produced. Any member of the board, or any agent designated by the board, may administer oaths or affirmations, examine witnesses and receive such evidence.

(2) Any person appearing before the board shall have the right to be represented by counsel.

(3) *The district court, upon application by the board or by the person subpoenaed, shall have jurisdiction to issue an order:*

(A) Requiring such person to appear before the board or the board['s] duly authorized agent to produce evidence relating to the matter under investigation; or

(B) *revoking, limiting or modifying the subpoena if in the court's opinion the evidence demanded does not relate to practices which may be grounds for disciplinary action, is not relevant to the charge which is the subject matter of the hearing or investigation or does not describe with sufficient particularity the evidence which is required to be produced.*" (Emphasis added.)

For the following reasons, we conclude neither the KJRA's exhaustion requirement nor its specific procedures for judicial review apply to the judicial review procedures established in K.S.A. 65-2839a(b)(3)(B).

First, the plain language of K.S.A. 65-2839a(b)(3) provides for an "application" to the district court for limited review of a specific, nonfinal agency action rather than a "petition for judicial review" of a final agency action.

Second, in contrast to the requirements for review of a nonfinal agency action under the KJRA, K.S.A. 65-2839a(b)(3)(B) gives the district court authority to revoke, limit, or modify a Board-issued subpoena without consideration of whether the applying party would be entitled to judicial review of any final action taken by the Board or whether postponing review would result in "irreparable harm." See K.S.A. 77-608 (establishing criteria for interlocutory review of nonfinal agency actions under the KJRA).

Third, the plain language of K.S.A. 65-2839a(b)(3)(B) sets forth a straightforward review procedure and limits the district court's options for disposition. Specifically, upon application of the subpoenaed party, the district court has jurisdiction to issue an order revoking, limiting, or modifying a Board-issued subpoena if the court finds that "the evidence demanded does not relate to practices which may be grounds for disciplinary action, is not relevant to the charge which is the subject matter of the hearing or investigation or does not describe with sufficient particularity the evidence which is required to be produced." K.S.A. 65-2839a(b)(3)(B).

The specific procedural and dispositional limits imposed under K.S.A. 65-2839a(b)(3)(B) contrast sharply with the more expansive procedures and dispositions contemplated under the KJRA. See,

*e.g.*, K.S.A. 77-610 (setting forth requirements for initiating a petition for judicial review, costs, and types of relief that may be sought); K.S.A. 2011 Supp. 77-614 (setting forth requirements for filing a petition, contents of a petition, and service of process); K.S.A. 2011 Supp. 77-621(c) (setting forth scope of review, listing eight different types of agency actions that may entitle a petitioner to relief); K.S.A. 77-622 (authorizing courts to award damages or compensation under some circumstances and to grant several different types of relief); K.S.A. 77-624 (authorizing civil enforcement of agency actions including enforcement of a subpoena, discovery order, or protective order by filing a petition for civil enforcement in the district court).

Under these circumstances, we simply cannot reconcile the KJRA or its administrative exhaustion and "final agency action" requirements with the limited application procedure permitted under K.S.A. 65-2839a(b)(3)(B) for district court review of a nonfinal agency action (*i.e.*, a Board-issued subpoena). Therefore, we conclude the KJRA does not apply to the distinct and limited procedure for judicial review of Board-issued subpoenas established in K.S.A. 65-2839a(b)(3)(B).

*Common-law doctrine of exhaustion*

But this conclusion does not end our analysis because even if K.S.A. 65-2839a(b)(3)(B) falls outside the reach of the KJRA, the common-law doctrine of administrative exhaustion may still apply. See *Friedman*, 287 Kan. at 753-54 ("The KJRA codified the [common-law] exhaustion of remedies requirement and, arguably, reduced the court's discretion to circumvent its employment by setting forth very limited, statutorily defined exceptions."). Consequently, we next consider whether the language of K.S.A. 65-2839a(b)(1), which provides that "[w]ithin five days after the service of the subpoena . . . such person may petition the board to revoke, limit or modify the subpoena," creates an administrative remedy that must be exhausted before filing an application or "petition" in district court for review of a subpoena under K.S.A. 65-2839a(b)(3)(B).

We conclude that K.S.A. 65-2839a(b)(1) permits but does not require a person to seek relief from the Board before applying to the district court for review of a subpoena.

The most obvious basis for this conclusion is the permissive language of K.S.A. 65-2839a(b)(1) (*i.e.*, "such person *may* petition the board to revoke, limit or modify the subpoena"). Further, the language of subsection (b)(3)(B) supports this analysis in that it provides the district court with "jurisdiction" to review the subpoena based solely upon "application" by the Board or person subpoenaed. If the legislature had intended compliance with subsection (b)(1) to be a condition precedent for applying for relief from the district court under subsection (b)(3)(B), it could have easily provided that requirement in subsection (b)(3)(B).

Further, we find no agency regulation interpreting or applying K.S.A. 65-2839a(b)(1)'s provision for petitioning the Board as a prerequisite to seeking judicial review. Compare 29 U.S.C. § 161(1) (2006) (authorizing National Labor Relations Board (NLRB) to issue subpoenas and providing 5-day time frame within which subpoenaed party *may* petition NLRB to revoke subpoena) with its interpreting regulation, 29 C.F.R. § 102.31(b) (2011) ("Any person served with a subpoena, . . . if he or she does not intend to comply with the subpoena, *shall*, within 5 days after the date of service of the subpoena, petition in writing to revoke the subpoena." [Emphasis added.]); see also *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 497-500 (4th Cir. 2011) (discussing the division of authority between the NLRB and the courts regarding subpoenas; recognizing that the NLRB has authority "to revoke subpoenas" and "to make substantive rulings on the grounds for objection to subpoenas," including objections based on privilege, "with judicial review available only after objections are considered and denied by the Board."); *Hortex Manufacturing Co. v. National Labor Relations Board*, 364 F.2d 302, 303 (5th Cir. 1966) (citing 29 C.F.R. § 102.31[b] in support of its conclusion that 29 U.S.C. § 161[1] "contemplates Board action on a motion to revoke a [subpoena] before the jurisdiction of a district court, with its underlying contempt sanction, [may] be invoked in an enforcement proceeding.").

Applying the common-law doctrine of exhaustion, we conclude K.S.A. 65-2839a(b)(1) permits but does not require a subpoenaed party to petition the Board to revoke, limit, or modify a subpoena before applying for the same relief from the district court under K.S.A. 65-2839a(b)(3)(B).

Before moving to the merits of Ryser's appeal, we note that even if we had concluded that K.S.A. 65-2839a(b)(1) creates an administrative remedy that must be exhausted before applying to the district court for relief under subsection (b)(3)(B), the failure to exhaust that administrative remedy would not necessarily deprive the district court of jurisdiction to consider the subpoenaed party's application for judicial relief. See, *e.g.*, *Chelf v. State*, 46 Kan. App. 2d 522, 530-33, 263 P.3d 852 (2011) (discussing efforts by the United States Supreme Court to clarify the distinction between claim-processing rules and jurisdictional limitations and applying the " 'administrable bright line' " rule from *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 [2006], that a "statutory requirement will not be deemed jurisdictional unless the statute itself reflects a clear indication that the legislature wanted the requirements to be jurisdictional"); see also *Forest Guardians v. U.S. Forest Service*, 641 F.3d 423, 431-33 (10th Cir. 2011) (discussing jurisdictional and nonjurisdictional exhaustion); *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (explaining that " 'exhaustion' " as it relates to administrative law describes two distinct legal concepts—a judicially created " 'non-jurisdictional exhaustion' " that can be waived or excused requiring parties who seek to challenge an agency action to exhaust available remedies before seeking judicial review, and a legislatively mandated " 'jurisdictional exhaustion' " which requires a clear, unequivocal legislative statement barring judicial review until the administrative agency has come to a decision).

## The District Court Correctly Denied Ryser's Motion to Revoke the Subpoena.

Turning to the merits of this appeal, Ryser claims her practice of medicine in Missouri was not a practice which could be "grounds for disciplinary action" under K.S.A. 65-2839a(b)(1), (3)(B) or an

investigation for any possible violations under K.S.A. 2011 Supp. 65-2836. Thus, she reasons the Board exceeded its statutory authority by opening the disciplinary investigation and issuing a subpoena for records based on her practice of medicine in Missouri and the district court erred in failing to revoke the subpoena.

The Board contends it has broad authority to investigate possible violations of the Act by any person licensed to practice medicine in Kansas and that the allegations arising from Ryser's treatment of a patient in Missouri, if true, constituted grounds for discipline under several provisions of the Act. Therefore, the Board urges us to affirm the district court's order enforcing the subpoena.

"Whether an agency has exceeded its statutory authority requires interpretation of the statutes establishing the agency. This presents a question of law subject to unlimited review by an appellate court. [Citation omitted.]" *Kansas Industrial Consumers Group, Inc. v. Kansas Corporation Comm'n*, 36 Kan. App. 2d 83, 92, 138 P.3d 338, *rev. denied* 282 Kan. 790 (2006). Similarly, whether the district court erred in interpreting the Act requires statutory interpretation and is subject to unlimited review. See *Unruh*, 289 Kan. at 1193.

A district court is authorized to revoke a Board subpoena "if in the court's opinion the evidence demanded does not relate to practices which may be grounds for disciplinary action." K.S.A. 65-2839a(b)(3)(B). Ryser claims the evidence sought by the Board—medical records related to Ryser's treatment of a patient in Missouri—does not relate to practices which may be grounds for disciplinary action because the Board has no authority to investigate or discipline her for acts related to her practice of medicine in Missouri. We disagree.

The State has broad authority to regulate the practice of medicine. *Corder v. Kansas Board of Healing Arts*, 256 Kan. 638, 654, 889 P.2d 1127 (1994) (citing *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 601-02, 808 P.2d 1355 [1991]). To that end, the legislature enacted the Act and established the Board as the administrative agency charged with administering the Act under K.S.A. 65-2812.

The Board has authority to enforce the Act "and for that purpose shall make all necessary investigations relative thereto." K.S.A. 65-2864. As part of any Board investigation or proceeding, the Board has the power to issue subpoenas. K.S.A. 65-2839a(b)(1). The Board is also authorized to appoint a disciplinary counsel who "shall have the power and the duty to investigate or cause to be investigated all matters involving professional incompetency, unprofessional conduct or any other matter which may result in disciplinary action against a licensee pursuant to K.S.A. 65-2836 through 65-2844, and amendments thereto." K.S.A. 65-2840a; see also K.S.A. 2011 Supp. 65-2836 (setting forth 29 grounds for disciplinary action); K.S.A. 2011 Supp. 65-2837(a), (b) (defining professional incompetency and unprofessional conduct). Finally, the Board "shall have jurisdiction of proceedings to take disciplinary action authorized by K.S.A. 65-2836 and amendments thereto *against any licensee practicing under [the Act]*." (Emphasis added.) K.S.A. 2011 Supp. 65-2838(a).

Thus, as the district court found, the central question is whether Ryser was a "licensee practicing under [the Act]" when she treated a patient in Missouri. If so, the Board had jurisdiction to investigate and take disciplinary action of that practice, including the issuance of a subpoena under K.S.A. 65-2839a(b)(1).

*Ryser is a "licensee" under the Act*

The term "licensee," as used in K.S.A. 2011 Supp. 65-2836 and K.S.A. 2011 Supp. 65-2837, means "all persons issued a license, permit or special permit pursuant to article 28 of chapter 65 of the Kansas Statutes Annotated." K.S.A. 2011 Supp. 65-2837(e). Ryser does not dispute that she is a licensee within the meaning of the Act, having been licensed in this state since 1965 and having renewed her license yearly since then. However, throughout her appellate brief, Ryser suggests she is only "incidentally" licensed in Kansas because her primary practice is in Missouri. She fails to explain, however, the meaning or significance of the term "incidental," although she implies that it somehow exempts her from regulation by the Board.

Curiously, the only relevant reference we find in the Act to the term "incidental" is in K.S.A. 2011 Supp. 65-2872, a statute not specifically addressed by either of the parties. That statute provides that the "practice of the healing arts shall not be construed to include" numerous categories of individuals, including: "Practitioners of the healing arts *licensed in another state* when and while *incidentally called into this state* in consultation with practitioners licensed in this state." (Emphasis added.) K.S.A. 2011 Supp. 65-2872(j). Clearly, this section exempts practitioners who are *not* licensed in Kansas but nevertheless are called into the state to "incidentally" consult with practitioners who are licensed in this state. Ryser does not meet this exception.

We find no exemption under the Act for "incidental" licensees, and for obvious reasons, we would not expect to do so. As this court explained in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 453, 436 P.2d 828 (1968):

> "The whole purpose and tenor of the healing arts act is the protection of the public against unprofessional, improper, unauthorized and unqualified practice of the healing arts. The goal is to secure to the people the services of competent, trustworthy practitioners. The act seeks to do this through licensure. The licensing by the state, granted only after minimal standards of proficiency are met, amounts to the state's recognition of the licentiate as a qualified practitioner. The continued holding of the license may be taken by the public as official indication those standards are being maintained. The object of both granting and revoking a license is the same—to exclude the incompetent or unscrupulous from the practice of the healing arts."

Simply stated, the State's interest is in regulating the professional conduct of persons licensed to practice under the Act. See K.S.A. 65-2801. That interest does not diminish simply because the professional conduct occurred across a state line.

*Ryser was "practicing under [the Act]"*

Ryser further suggests that her treatment of patients in Missouri does not constitute "practicing under the Act" and therefore she is not subject to discipline under the Act and the subpoena was unauthorized.

The Act does not define the phrase "any licensee practicing under [the Act]" in K.S.A. 2011 Supp. 65-2838(a). But the definitional

section of the Act, K.S.A. 2011 Supp. 65-2802, does provide that for "the purpose of this act the following definition shall apply":

"(a) *The healing arts include* any system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, or injury, and includes specifically but not by way of limitation *the practice of medicine and surgery.*" (Emphasis added.)

Further, under the Act, the following persons are "deemed to be engaged in the practice of medicine and surgery":

"(a) Persons who publicly profess to be physicians or surgeons, or publicly profess to assume the duties incident to the practice of medicine or surgery or any of their branches.

"(b) Persons who prescribe, recommend or furnish medicine or drugs, or perform any surgical operation of whatever nature by the use of any surgical instrument, procedure, equipment or mechanical device for the diagnosis, cure or relief of any wounds, fractures, bodily injury, infirmity, disease, physical or mental illness or psychological disorder, of human beings.

"(c) Persons who attach to their name the title M.D., surgeon, physician, physician and surgeon, or any other word or abbreviation indicating that they are engaged in the treatment or diagnosis of ailments, diseases or injuries of human beings." K.S.A. 65-2869.

Ryser does not dispute that she meets the definition of "engaged in the practice of medicine and surgery" under all three sections of K.S.A. 65-2869. Instead, she contends those sections define individuals who are "deemed to practice medicine *in Kansas* under the auspices" of the Act. But no such geographic limitation is contained in K.S.A. 65-2869 or, for that matter, anywhere else within the Act.

Ryser also suggests we assume that because K.S.A. 65-2869 does not affirmatively *include* a physician "practicing in a foreign jurisdiction and being licensed in a foreign jurisdiction as being an individual who engages in the practice of medicine in Kansas," such physicians are exempt from the Act.

However, Ryser's argument that she is exempt from the Board's jurisdiction because K.S.A. 65-2869 does not affirmatively *include* physicians practicing outside Kansas contradicts the language of K.S.A. 2011 Supp. 65-2872. As discussed, that statute lists 18 separate categories of individuals who are deemed *not* to be engaged

in the practice of healing arts. Ryser does not suggest that she comes within any of those numerous exceptions. And, as the district court found, because Ryser is not specifically exempted under that statute, section (o) requires a finding that she *is* engaged in the "practice" of healing arts. That section provides that "[e]very act or practice falling in the field of the healing art, *not specifically excepted* [in 65-2872], *shall constitute the practice thereof."* (Emphasis added.) K.S.A. 2011 Supp. 65-2872(o).

Finally, Ryser contends the Board's jurisdiction to investigate and discipline a physician who is "dually or mutually licensed" is limited by K.S.A. 2011 Supp. 65-2836(j). K.S.A. 2011 Supp. 65-2836 provides "[a] licensee's license may be revoked, suspended, or limited, or the licensee may be publicly or privately censured or placed under probationary conditions" based upon the any of the grounds specified in the statute. One of those numerous grounds, section (j), applies when "[t]he licensee has had a license to practice the healing arts revoked, suspended or limited, has been censured or has had other disciplinary action taken, or an application for a license denied, by the proper licensing authority of another state." K.S.A. 2011 Supp. 65-2836(j).

While K.S.A. 2011 Supp. 65-2836 lists the grounds upon which a licensee's license can be revoked, suspended, or limited, it does not, as Ryser suggests, establish or limit the jurisdiction of the Board to investigate matters that ultimately may result in disciplinary actions. Moreover, as the Board points out, nothing about section (j) indicates it is the *only* ground for investigating or disciplining a dually or mutually licensed physician. Nor does section (j) imply that the Board can act only when the licensing authority of another state has first acted.

In conclusion, we hold the Board has jurisdiction to investigate Ryser's practice of medicine in Missouri under its general authority to take disciplinary action against "any licensee practicing under [the Act]" under K.S.A. 2011 Supp. 65-2838(a). Therefore, the district court correctly held that Ryser's practice of medicine in Missouri could provide "grounds for disciplinary action" under K.S.A. 65-2839a(b)(1), (3)(B) and an investigation for any possible violations under K.S.A. 2011 Supp. 65-2836.

The district court's denial of Ryser's petition to revoke the administrative subpoena is affirmed.