NOT DESIGNATED FOR PUBLICATION

No. 116,414

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Protest Application of
THE CITY OF COUNCIL GROVE
for the Tax Years 2012 and 2013 in Morris County, Kansas.

MEMORANDUM OPINION

Appeal from Morris District Court; STEVEN L. HORNBAKER, judge. Opinion filed August 25, 2017. Affirmed in part and dismissed in part.

*Michael A. Montoya*, of Michael A. Montoya, P.A., of Salina, for appellant Board of Morris County Commissioners.

*Linda Terrill*, of Property Tax Law Group, LLC, of Overland Park, for appellee City of Council Grove.

Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.

PER CURIAM: The Board of Morris County Commissioners (the County) challenges the district court's affirmation of the Kansas Court of Tax Appeals' (COTA) value on 352 recreational/residential home sites/lots (the Lots) surrounding Council Grove City Lake. The City of Council Grove (the City) had appealed the County's valuations for the tax years 2012 and 2013 to COTA on behalf of the Council Grove Lake Association (CGLA) pursuant to the City's lease with the CGLA. This lease agreement and ad valorem tax issue is unique and may be the only one in the State of Kansas. We deny the County's request for remand to reopen the record for additional evidence upon the County's reappraisal of the Lots for tax year 2012. Upon review of the record, we affirm the district court's judgment for tax year 2012. But as to tax year 2013, we find

1

that we lack jurisdiction to consider CGLA's appeal because the City did not authorize an appeal for that year. Accordingly, we affirm in part and dismiss in part.

FACTS

The property subject to this appeal is the unplatted improved land surrounding Council Grove City Lake. The City owns the Council Grove City Lake property which contains the Lots, all of which are subject to a ground lease between individual members of the CGLA and the City. The Lots contain improvements including docks, decks, mobile homes, and permanent residences. Through appraisal of the Lots, the County tried to establish fair market value for tax years 2012 and 2013. The County hired Marion Johnson, a certified assessment evaluator, to appraise the Lots.

Johnson separately determined the leased fee value and leasehold interest value of the land, then added the two to determine the appraised market value of the property. Johnson determined the leased fee value using the direct capitalization method and compiled the leasehold value by adding the values for each of the Lots. He determined the land value of the Lots by subtracting various amounts and interests from the sale price of the tenants' improvements and the lessees' rights to the Lots. Ultimately, he determined the total value for the Lots was $11,112,840 for tax year 2012 and $11,037,960 for tax year 2013.

The City filed protest applications and appealed the County's valuations for tax years 2012 and 2013, arguing they were legally and technically flawed. The City did not present an independent appraisal; rather, it presented a certified appraiser, Thomas Slack, MAI, as an expert rebuttal witness. Slack reviewed Johnson's reports and believed Johnson's methodology violated the Uniform Standards of Professional Appraisal Practice (USPAP). Slack pointed to the fact the rental value of the property was determined by a long-term ground lease from the City—a local governing body—which

2

restricted the productivity and/or rental values of the property. Therefore, he believed the proper method for determining the market value in accordance with K.S.A. 2016 Supp. 79-503a was to determine the actual rental income, then capitalize.

COTA reviewed Johnson's appraisals and found they contained numerous USPAP violations. Specifically, it found:

"The most egregious USPAP violations were (1) Johnson determined various amounts by adding together the individual values of various estates or components parts (2013 USPAP Standard 1-4(e)), and (2) Johnson failed to analyze and adjust for the effect on value, if any, of the terms and conditions of the lease in place (2013 USPAP Standard 1-4(d)). Johnson's assemblage methodologies, without sufficient analysis and testing, are expressly prohibited by USPAP and, as such, are materially detrimental to the County's opinion of value. [See] *In re Board of County Comm'rs v. Jensen*, 32 Kan. App. 2d 730, 88 P.3d 242 (2004)[;] *In re Amoco Production Co.*, 33 Kan. App. 2d 329, 337, 102 P.3d 1176 (2004). Moreover, the Board finds no evidence indicating Johnson's scheme for determining the subject property's land value (performing adjustments to the sale price of the improvement situated upon the land and the tenant's leasehold interest therein) is a recognized or accepted valuation methodology."

COTA found the County failed to meet its burden of persuasion; however, it found the leased fee valuation for each lot in Johnson's appraisal complied with K.S.A. 2016 Supp. 79-503a and was therefore "the sole competent valuation method available." It ultimately determined the value of the property was $2,366,442 for tax year 2012 and $2,386,800 for tax year 2013. The County sought judicial review. The district court affirmed, finding Johnson's appraisal methods did not conform to USPAP Standards. It further found he failed to determine the fair market value of the property in accordance with K.S.A. 2016 Supp. 79-503a. Additionally, the district court found COTA's valuations were appropriate because it excluded the non-USPAP compliant errors in Johnson's reports and denied the County's request to remand for reappraisal. The County now appeals to this court.

3

*COTA's property valuation is supported by the evidence.*

The County argues COTA erred in rejecting Johnson's appraisals. Alternatively, the County argues that even if Johnson's appraisals did not comply with USPAP Standards, the matter should be remanded for reappraisal.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs appellate review of COTA (now Board of Tax Appeals) rulings. K.S.A. 2016 Supp. 74-2426(a), (c); K.S.A. 2016 Supp. 77-603(a). The KJRA delineates specific circumstances under which this court may properly grant relief: (1) the agency has erroneously interpreted or applied the law; or (2) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure. K.S.A. 2016 Supp. 77-621(c)(4), (5). Because the County is challenging the validity of COTA's action, it bears the burden of proving the invalidity of the action. K.S.A. 2016 Supp. 77-621(a)(1).

To the extent this issue involves interpretation of a statute, this court's review is unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). However, as a general rule in construing tax statutes, provisions which impose a tax are to be construed strictly in favor of the taxpayer. *In re Tax Exemption Application of Central Illinois Public Services Co.*, 276 Kan. 612, 616, 78 P.3d 419 (2003).

*COTA properly rejected Johnson's valuations.*

The unplatted lots subject to this appeal are primarily classified as residential. Therefore, the County had the burden of production and persuasion before COTA. See K.S.A. 2016 Supp. 79-1609. "Each parcel of real property shall be appraised at its fair

4

market value in money, the value thereof to be determined by the appraiser from actual view and inspection of the property." K.S.A. 79-501. In pertinent part, K.S.A. 2016 Supp. 79-503a states: "'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion."

Residential appraisal valuations must be in compliance with USPAP Standards. K.S.A. 2016 Supp. 79-505(a)(1); K.S.A. 79-506(a). COTA determined Johnson's appraisal methodologies violated USPAP Standard 1-4(d) and (e). In its brief, the County fails to properly address this finding. It does not explain whether Johnson's methodologies complied with the USPAP Standards identified by COTA; rather, it argues Johnson's appraisal was performed in accordance with this court's mandate in *In re Tax Complaint of Wine*, 46 Kan. App. 2d 134, 260 P.3d 1234 (2011).

As the district court correctly pointed out, *Wine* provides no guidance. Although *Wine* dealt with the same properties at issue in this case, it related solely to the valuation of the improvements on the various lots, not the value of the various lots themselves. *Wine* never mentioned a valuation method for the lots covered by the leases; rather, it found the County erroneously allocated the leasehold interest values to the tenants rather than the City. 46 Kan. App. 2d at 140-41. The County's argument that this court's mandate in *Wine* superseded the relevant USPAP provisions is unpersuasive.

Further, the County fails to address COTA's finding that Johnson's appraisal methods were inconsistent with K.S.A. 2016 Supp. 79-503a. An issue not briefed by the appellant is deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Nevertheless, COTA was correct in its determination. Johnson failed to consider the long-term ground lease agreement drafted by the City. K.S.A. 2016 Supp. 79-503a(f) and (h) require the appraiser to take into

5

account restrictions on productivity and rental value imposed by a local governing body. The record reflects this lease agreement is governed by the City and ultimately provides the City with many benefits including the right to control and manage its major source for fresh water within the City. The City's lease agreement, entered into between the City and the CGLA, is clearly a negotiated agreement between the parties and sets rent for each of the Lots at $1,000 for tax year 2012 and $1,100 for tax year 2013. Johnson did not take those rates into account; thus, he failed to properly consider the factors set forth in K.S.A. 2016 Supp. 79-503a(f), (h), and (j). COTA properly rejected part of Johnson's valuations; accordingly, the district court properly affirmed COTA's decision to accept only the valuation for the Lots for tax year 2012 and not any value tied to the claimed intangible value of the lease on each lot.

*Remand is not required.*

In the alternative, the County argues for remand. Its request is flawed for two reasons. First, doing so would essentially shift the burden onto the City. The subject property is primarily classified as residential; thus, the County had the burden of production and persuasion before COTA. See K.S.A. 2016 Supp. 79-1609. The County argues COTA's valuation does not necessarily reflect fair market rent value as opposed to contract rental rates. However, it presented no evidence regarding the fair market rental value of the properties. The County failed to recognize its burden below.

Secondly, "COTA is not required to wholly reject an appraisal that contains non-USPAP compliant errors that are not materially detrimental." *In re Equalization Appeal of Kansas Star Casino*, 52 Kan. App. 2d 50, 66, 362 P.3d 1109 (2015). Slack testified Johnson's income approach was flawed; however, it was a generally accepted methodology. COTA rejected the non-USPAP compliant errors in Johnson's appraisal. It found the leased fee valuation was a competent valuation method in compliance with K.S.A. 2016 Supp. 79-503a. Remand is unnecessary because the errors in Johnson's

appraisal did not affect COTA's ability to determine a fair valuation for the Lots. See *In re Kansas Star Casino*, 52 Kan. App. 2d at 66. COTA's decision on the property's valuation for tax year 2012 is supported by the record, and the district court properly denied the County's request to remand.

The County failed to meet its burden before COTA; it does not get two bites at the apple to establish the market value on the Lots.

*COTA had no jurisdiction to hear the 2013 tax appeal.*

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *Wiechman v. Huddleston,* 304 Kan. 80, 84-85, 370 P.3d 1194 (2017). If the district court lacked jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 456, 284 P.3d 337 (2012).

For the 2012 tax year, the City passed a grant of authority providing CGLA full and complete exclusive authority to prosecute the 2012 tax appeal. Paragraph 5 of the grant of authority specifically provided that the City would "consider extending the Grant for subsequent years."  It is undisputed that the City never took any formal action to extend the grant of authority to appeal for any subsequent years. For the tax year 2013, Denny Matthews, City Clerk, signed the notice of appeal and a declaration of representative form authorizing Linda Terrill, an attorney, to represent the City for tax year 2013. Matthews testified he executed the appeal and declaration on the City's behalf on the advice of the City Attorney. He further testified the City Council never took specific action to authorize the 2013 appeal, nor did it formally ratify his action after the

fact. Finally, he testified he thought the declaration form he signed was for the 2012 tax appeal and not the 2013 tax appeal.

Here, in spite of the lack of any formal action by the City to authorize the appeal, the City makes two claims. First it argues the act of appealing the 2013 valuation was ratified by the City when the status of the City's 2012 and 2013 tax appeal issues were *discussed* by the City Council on at least one occasion. Thus, the City knew the 2013 appeal was pending and ratified the appeal since it was *discussed*. The exact date of the meeting of the City Council is unknown. In other words, the City is suggesting that because it acquiesced and did not repudiate Matthews' actions, it ratified Matthews' actions. But when faced with a similar argument by the City of Topeka in *City of Topeka v. Imming*, 51 Kan. App. 2d 247, Syl. ¶ 3, 344 P.3d 957 (2015), we held that "[i]n dealing with cities, there must be some affirmative act to ratify or some action taken by the governing body that is consistent with ratification in order to ratify some unauthorized act of an agent of the city." In *Imming*, the City Manager filed a declaratory judgment action against Imming in Shawnee County District Court on behalf of the City of Topeka without prior authorization from the City Council. The City Manager, on behalf of the City of Topeka, challenged the validity of Imming's petition as an invalid attempt at initiative referendum. The City of Topeka never took formal action to approve or ratify the filing of the lawsuit by the City Manager. The *Imming* panel found the lawsuit should have been dismissed by the district court since there was no formal ratification by the City of Topeka. 51 Kan. App. 2d at 255-56.

Though the record reflects there was a discussion with the City Council about the status of the 2012 and 2013 tax appeals, we find nothing where the City Council voted to authorize or ratify the decision to appeal the 2013 tax assessment to COTA. The record reflects the City formally authorized the 2012 appeal and specifically left open the question of whether it would "extend the grant for subsequent years." In *Imming*, the panel found: "Generally, in order to constitute ratification, there must be some

affirmative action approving the action. The dictionary definition of 'ratify' is '[t]o give formal sanction or approval to and thereby validate' some actions. [Citation omitted.]" 51 Kan. App. 2d at 253.

Without a vote of the City Council or some evidence it attempted to ratify the filing of the 2013 tax assessment appeal, we are hard pressed to find, despite the City's apparent knowledge of the tax assessment appeal, it acquiesced in the appeal being taken since the Kansas Open Meetings Act (KOMA) requires actions by a city to be decided and taken in an open meeting. K.S.A. 2016 Supp. 75-4317. Allowing the argument of acquiescence to prevail would allow government entities to avoid the intent of the KOMA. Government decisions could then be made without the required open and transparent requirements of the KOMA. This would destroy the democratic process of government meetings for decisions to be made, acted upon, and decided in an open public meeting. Silent acquiescence by the controlling authority of an act taken on behalf of the government would be counterintuitive. See *Imming*, 51 Kan. App. 2d at 254.

Next the City argues that Matthews, as an agent of the City, had both actual and apparent authority to sign the documents initiating the appeal. But Matthews testified the City did not authorize him to sign the documents and he did not believe he had such authority in this case. Accordingly, the City has failed to establish that Matthews had actual authority to initiate the appeal. As to apparent authority, Matthews believed he was signing documents related to the 2012 tax appeal. It was no secret the City had not taken any action to extend its grant of authority to subsequent years. The grant of authority expressly restricted Matthews or anyone else from authorizing anyone other than the City to proceed with any future tax appeals.

The County argues that neither COTA nor the district court had jurisdiction to hear the 2013 appeal because the City did not properly authorize the appeal. For the

9

reasons already outlined we agree the City did not properly appeal the County's assessment for tax year 2013.

As to COTA's jurisdiction, both COTA and the district court found that because the amendments to K.S.A. 2016 Supp. 74-2437 apply retroactively, COTA was precluded from determining who may sign the appeal forms and precluded COTA from determining who may represent taxpayers. This is a correct interpretation of the amendments to the statute. Although the parties disagree regarding whether the statute should be applied retroactively, we need not decide. Because we find the City did not authorize the appeal, the result is the same. If we determine the statute should be applied retroactively, COTA clearly did not have the authority to rule on who could properly represent the taxpayer and sign the documents. Therefore, COTA was correct to so rule. But the district court always has that authority, which the City concedes. Likewise, if we were to find COTA had the authority to rule on jurisdiction, as it did under the prior statute, then if the City did not authorize the appeal, COTA lacked jurisdiction.

Here, the district court erred in finding it had jurisdiction because the City did not properly authorize the 2013 appeal. If a trial court lacks jurisdiction to enter an order, an appellate court reviewing the trial court's order similarly lacks jurisdiction over the subject matter of the appeal. *Ryser*, 295 Kan. at 456. Accordingly, we dismiss the 2013 appeal for lack of jurisdiction.

Affirmed in part and dismissed in part.

10