NOT DESIGNATED FOR PUBLICATION

No. 116,777

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH WRIGHT,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; STEVEN E. JOHNSON, judge. Opinion filed December 8, 2017. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ashley R. Iverson*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.

PER CURIAM: Joseph Wright appeals the suspension of his driver's license after a de novo trial in district court. On appeal, Wright contends that his constitutional right to due process was violated at the time a Kansas Highway Patrol trooper requested that he submit to an evidentiary breath test following his arrest for suspicion of driving a motor vehicle under the influence of alcohol (DUI). Specifically, Wright argues that the implied consent advisories he received from the Kansas Highway Patrol trooper were incorrect and misleading. As such, Wright claims that the district court erred in affirming the administrative order of suspension of his driver's license. For the reasons set forth in this opinion, we do not find Wright's arguments to be persuasive. Thus, we affirm.

1

FACTS

The material facts are not disputed by the parties. On February 4, 2016, Kansas Highway Patrol Trooper Scott Walker stopped Wright in Ellsworth County for speeding and failing to stay within a single lane. During the stop, Trooper Walker observed numerous indications that Wright had driven a motor vehicle under the influence of alcohol—including slurred speech, an odor of alcoholic beverages, alcoholic beverage containers found in the car, failed field sobriety tests, bloodshot eyes, poor balance or coordination, admission that he had been drinking, and failed preliminary breath test. Accordingly, Trooper Walker arrested Wright on suspicion of DUI.

After arresting Wright, Trooper Walker provided him with the required implied consent advisories—both orally and in writing on a DC-70 form. Trooper Walker then gave Wright a copy of the DC-70 form, and he consented to taking an Intoxilyzer breath test. Wright's test indicated he had a blood alcohol content over the legal limit of .08. After the test, Trooper Walker completed an Officer's Certification and Notice of Suspension form (DC-27) and provided Wright with a copy of the form.

On February 10, 2016, Wright filed a timely request for an administrative hearing. At his hearing, Wright challenged—among other things—the constitutionality of the implied consent statute. At the conclusion of the hearing, the administrative hearing officer upheld the suspension of Wright's driving privileges. Thereafter, Wright filed a petition seeking judicial review in Ellsworth County District Court.

The district court held a trial de novo on October 14, 2016. At trial, Trooper Walker testified as a witness and the district court accepted the DC-70 form into evidence. Moreover, Wright challenged the constitutionality of the implied consent advisories. After considering the evidence and hearing the arguments of counsel, the district court upheld the suspension of Wright's driving privileges. In addition, the district

2

court determined that, even if the exclusionary rule is applicable in driver's license suspension proceedings, the good faith exception would apply under the circumstances presented in this case to allow for the admission of the results of the evidentiary breath test.

ANALYSIS

On appeal, Wright presents one issue—whether the implied consent advisories given to him by Trooper Walker were an incorrect statement of his constitutional rights. Because this is a judicial review action, our scope of review is limited by the Kansas Judicial Review Act (KJRA), K.S.A. 2016 Supp. 77-601, et seq.; see also *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity—in this case Wright. K.S.A. 2016 Supp. 77-621(a)(1).

Under the KJRA, the standard of review varies depending upon the issue raised. Under K.S.A. 2016 Supp. 77-621(c), we may only grant relief if one or more of the enumerated circumstances are present:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is

3

substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Here, Wright argues that the implied consent advisories—and thus KDOR's action in suspending his driver's license—are unconstitutional. Matters of statutory and constitutional interpretation "raise pure questions of law subject to unlimited appellate review." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, Syl. ¶ 1, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015); see also *Katz v. Kansas Dep't of Revenue*, 45 Kan. App. 2d 877, 884, 256 P.3d 876 (2011). Thus, to the extent that the resolution of this judicial review action involves constitutional interpretation, our review is unlimited.

It is undisputed that the Kansas Supreme Court has declared K.S.A. 2016 Supp. 8-1025—which made it a crime to withdraw the implied consent for testing that arises under K.S.A. 2016 Supp. 8-1001 by expressly refusing to take the test—to be unconstitutional in *State v. Ryce*, 303 Kan. 899, 902-03, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017). Likewise, in *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017), our Supreme Court held that a driver's consent to a breath test premised on the threat of criminal prosecution for test refusal "was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if [the driver] had refused to submit to breath-alcohol testing." 303 Kan. at 889. We are duty bound to follow these decisions. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

In *Ryce I*, the Kansas Supreme Court explained that the Fourth Amendment of the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect people from unreasonable searches. While our Supreme Court recognized that consent can be a valid basis to perform a warrantless search, it also recognized that the court also

4

held that the Fourth Amendment protected an individual's right to withdraw that consent. 303 Kan. at 957. Accordingly, our Supreme Court concluded that K.S.A. 2014 Supp. 8-1025 is facially unconstitutional because it is not narrowly tailored to serve the interests that the Kansas Legislature was trying to protect when it enacted the statute. 303 Kan. 899, Syl. ¶ 12.

Shortly after *Ryce I* was published, the United States Supreme Court issued an opinion in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). The *Birchfield* case involved statutes similar to K.S.A. 2016 Supp. 8-1025 from various states that criminalized the refusal of submitting to blood- and breath-alcohol testing. The United States Supreme Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving but does not permit warrantless blood tests. 136 S. Ct. at 2185. In addition, *Birchfield* also held that motorists cannot be deemed to consent to a blood test on "pain of committing a criminal offense." 136 S. Ct. at 2186.

In light of the *Birchfield* decision, the Kansas Supreme Court granted the State's motion for a rehearing in *Ryce I*. Ultimately, in *Ryce II* our Supreme Court reaffirmed its holding in *Ryce I* that K.S.A. 8-1025 is facially unconstitutional. 306 Kan. at 699-700. In so holding, our Supreme Court emphasized that "the key to *Ryce I* and its sister cases is an issue of statutory interpretation . . . not, as in *Birchfield*, [with] whether warrantless blood and breath tests were reasonable under the Fourth Amendment." *Ryce II*, 306 Kan. at 699.

As the Kansas Supreme Court has held, the administrative suspension of a driver's license is separate and distinct from the bringing of criminal charges against the driver stemming from the same incident. *Martin*, 285 Kan. at 642; see also *State v. Gee*, 27 Kan. App. 2d 739, 743, 8 P.3d 45 (2000). In *Gee*, a panel of this court recognized that a driver's failure of a breath test or refusal to submit to testing is often the "starting point

for a parallel set of procedures, one criminal and one civil, that are independent of one another." 27 Kan. App. 2d at 743. In fact, K.S.A. 2016 Supp. 8-1020(t) specifically states that the disposition of criminal charges against a driver "shall not affect the suspension or suspension and restriction to be imposed under this section."

Furthermore, the Kansas Supreme Court determined in *Martin* that the exclusionary rule generally does not apply in cases involving the administrative suspension of driving privileges. *Martin*, 285 Kan. at 646. In particular, we note the following language from Syl. ¶ 8 of the *Martin* opinion:

> "The exclusionary rule is a judicially created remedy, designed to deter the government from engaging in unconstitutional conduct. The United States Supreme Court has held the rule applicable only where its deterrence benefits outweigh its substantial social costs. The balance outlined by the United States Supreme Court between the benefits and costs of application of the exclusionary rule, when employed in driver's license suspension proceedings, tips in favor of the Department of Revenue and against Martin and other drivers. The deterrent effect of the rule is already accomplished in the criminal arena. Any additional deterrent effect on law enforcement violation of the Fourth Amendment and § 15 to be gleaned from extension of the rule beyond the criminal DUI setting would be minimal, and it cannot outweigh the remedial imperative of preventing alcohol–and/or drug-impaired drivers from injury or killing themselves or others." 285 Kan. 625, Syl. ¶ 8.

Since the *Martin* decision, multiple panels of our court have also held that the exclusionary rule does not apply in administrative appeals. See *Witthuhn v. Kansas Dep't of Revenue*, No. 115,220, 2017 WL 947271, at *2 (Kan. App. 2017) (unpublished opinion); *Maupin v. Kansas Dep't of Revenue*, No. 115,068, 2016 WL 5867243, at *2 (Kan. App. 2016) (unpublished opinion); *Schwerdt v. Kansas Dep't of Revenue*, No. 110,086, 2014 WL 3294078, at *3 (Kan. App. 2014) (unpublished opinion).

Hence, "a petitioner may *raise* Fourth Amendment claims, but such claims have *no practical effect* (meaning such claims do not trigger the exclusion of resultant evidence) in the administrative context." *Kingsley v. Kansas Dep't of Revenue*, 288 Kan. 390, 396, 204 P.3d 562 (2009) (citing *Martin*, 285 Kan. at 646). Moreover, we are generally to avoid addressing unnecessary constitutional questions where valid alternative grounds for relief exist. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d 282 (2016). Accordingly, we reject the invitation to expand the exclusionary rule to driver's license suspension proceedings.

Finally, even if the exclusionary rule was applicable in administrative proceedings to suspend a person's driving privileges, we would find the good-faith exception to the exclusionary rule to be applicable under the circumstances presented. The good-faith exception to the exclusionary rule initially applied when a law enforcement officer reasonably relied on a search warrant that was later found to be invalid, but the exception has subsequently been extended to law enforcement officers who reasonably rely on a statute authorizing a warrantless search that is later determined to be unconstitutional. See *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987); *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010) (adopting *Krull*), *cert. denied* 563 U.S. 945 (2011). In order to determine whether a law enforcement officer reasonably relied on a statute, courts are to consider whether the legislature "'wholly abandoned its responsibility to enact constitutional laws'" and whether the statute was so clearly unconstitutional that a reasonable officer should have known that it was unconstitutional. *Daniel*, 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

In this case, it is undisputed that Wright was arrested *prior* to the release of the *Ryce* and *Nece* decisions by the Kansas Supreme Court. Specifically, Wright was arrested on February 4, 2016, while the opinions in *Ryce I* and *Nece* were both released on February 26, 2016. Moreover, the Kansas Supreme Court did not release the opinion in

*Ryce II* until June 30, 2017. As such, the Highway Patrol trooper who arrested Wright did not have the benefit of these opinions to provide him guidance.

As this court found in *State v. Kraemer*, 52 Kan. App. 2d 686, 371 P.3d 954 (2016), there is "nothing here to suggest either that the Kansas Legislature wholly abandoned its responsibility to enact constitutional laws or that [K.S.A. 2016 Supp. 8-1025] was so clearly unconstitutional . . . that a reasonably well-trained officer would have known that it was unconstitutional . . . ." 52 Kan. App. 2d at 964. At the time Trooper Walker arrested Wright, K.S.A. 2016 Supp. 8-1001 required that he advise Wright of the potential criminal consequences of refusal before asking him to submit to testing. Thus, we would not expect a reasonable law enforcement officer to predict the answer to this difficult constitutional question.

Affirmed.